# EXHIBIT "1"

## Agreement

This Agreement (this "Agreement"), dated as of December 22, 2023 (the "Effective Date"), is by and between Epistemix, Inc., a Delaware corporation with offices at 3706 Butler Street., Pittsburgh, PA 15201 ("Customer") and Nahigian Strategies, LLC (with offices at 1455 Pennsylvania Avenue, NW, Ste. 100, Washington DC 20004) ("Service Provider" and together with Customer, the "Parties", and each a "Party").

WHEREAS Customer has received services from the Service Provider;

WHEREAS Customer desires to retain Service Provider for future work in separate agreements;

WHEREAS Service Provider has performed services for Customer;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Service Provider and Customer agree as follows:

1. <u>Services</u>. Service Provider provided services to the Customer (the "Services") set out in one or more statements of work issued by Service Provider and accepted by Customer. Additional Statements of Work ("Statements of Work") shall be deemed issued and accepted only if signed by the Service Provider Contract Manager and the Customer Contract Manager, appointed pursuant to Section 2.1(a) and Section 3.1(a), respectively.

2. <u>Service Provider Obligations.</u> Service Provider shall:
   1. Designate employees or contractors that it determines, in its sole discretion, to be capable of filling the following positions:

      (a)     A primary contact to act as its authorized representative with respect to all matters pertaining to this Agreement (the "Service Provider Contract Manager").

      (b)     A number of employees or contractors that it deems sufficient to perform the Services set out in each Statement of Work, (collectively, with the Service Provider Contract Manager, "Provider Representatives").

   2. Make no changes in Provider Representatives except:

      (a)     Following notice to Customer.

      (b)     Upon the resignation, termination, death or disability of an existing Provider Representative.

   3. Be available to provide communications services at the request of the Customer, and expand this services agreement accordingly to meet that request.

      (a)     Each expansion of this services agreement will be captured in a new Scope of Work and corresponding fees and expenses.

3. <u>Customer Obligations, Representations, and Indemnification.</u>

**EXHIBIT**

tabbies®

1

1. Customer Shall:

   (a)    Designate one of its employees or agents to serve as its primary contact with respect to this Agreement and to act as its authorized representative with respect to matters pertaining to this Agreement (the "Customer Contract Manager"), with such designation to remain in force unless and until a successor Customer Contract Manager is appointed.

   (b)    Require that the Customer Contract Manager respond promptly to any requests from Service Provider for instructions, information, or approvals required by Service Provider to provide the Services.

   (c)    Cooperate with Service Provider in its performance of the Services and provide access to Customer's premises, employees, contractors, and equipment as required to enable Service Provider to provide the Services.

   (d)    Take all steps necessary, including obtaining any required licenses or consents, to prevent Customer-caused delays in Service Provider's provision of the Services.

2. Customer hereby agrees to indemnify, defend, and hold harmless Service Provider against any damages, losses, costs, liabilities, settlements and expenses (including without limitation costs and attorneys' fees) in connection with any claim or action that arises from an alleged violation of Customer's obligations or representations herein, or otherwise from Customer's use of the Services or Deliverables.

4.    Fees and Expenses.
   1. In consideration of the provision of the Services by the Service Provider and the rights granted to Customer under this Agreement, Customer shall pay $20,000.00 per month beginning February 2024, for each subsequent month until the total amount of $240,000 ("Total Amount") is paid. The Parties agree that full payment will be made not later than February 2025, and that nothing in this Agreement prohibits Customer from pursuing an accelerated payment schedule.

   2. The Parties also agree that any failure to make a monthly payment – 15 days late – shall automatically add a penalty of $24,000 (10 percent of fees due under this Agreement) to the remainder of what is owed under the payment scheduled described in this Agreement. Failure by Customer to pay what is owed by agreed date will trigger a per annum interest penalty of ten (10) percent on the remainder of the amount owed until the total fees under this Agreement are paid.

   3. Payment terms for subsequent agreements will be defined in their respective Scope of Work.

   4. Customer agrees to initiate each monthly payment on the last day of each month and without invoice by Service Provider until the fees are paid in full. Service Provider agrees to provide Customer with payment information.

5.    Limited Warranty and Limitation of Liability.
   1. Service Provider warrants that it shall perform the Services:

(a)      In accordance with the terms and subject to the conditions set out in the respective Agreement.

(b)      Using personnel of commercially reasonable skill, experience, and qualifications.

(c)      In a timely, workmanlike, and professional manner in accordance with generally recognized industry standards for similar services.

2.  Customer's sole and exclusive liability and Service Provider's sole and exclusive remedy for breach of this warranty shall be as follows:

(a)      Customer shall use reasonable commercial efforts to promptly cure any such breach; provided, that if Customer cannot cure such breach within a reasonable time (but no more than 30 days) after Service Provider's written notice of such breach, Service Provider may, at its option, terminate the Agreement by serving written notice of termination.

6.      <u>Term, Termination, and Survival</u>.

6.1      This Agreement shall commence as of the Effective Date (December 22, 2023) and shall continue thereafter until the Total Amount is paid in full.

6.2      Upon the Total Amount being paid, and in the absence of an additional scope of work agreed      to      by      the      Parties,      this      Agreement      shall      terminate.

7.      <u>Entire Agreement</u>. Notwithstanding a failure to pay the fees constituting a breach of this Agreement, Parties agree that this Agreement, including and together with any related Statements of Work, exhibits, schedules, attachments and appendices, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter. The parties acknowledge and agree that absent Customer's breach of the terms of this Agreement, if there is any conflict between the terms and conditions of this Agreement and the terms and conditions of any Statement of Work, the terms and conditions of this Agreement shall supersede and control.

8.      <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications under this Agreement (each, a "Notice", and with the correlative meaning "Notify") must be in writing and addressed to the other Party at its address set forth below (or to such other address that the receiving Party may designate from time to time in accordance with this Section). Unless otherwise agreed herein, all Notices must be delivered by personal delivery, nationally recognized overnight courier or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only (a) on receipt by the receiving Party; and (b) if the Party giving the Notice has complied with the requirements of this Section 8.

Notice to Customer:      john.cordier@epistemix.com

Attention: NS Inquiry for Epistemix

Notice to Service Provider:    ken@nahigianstrategies.com

Attention: Epistemix Inquiry for NS

9.      Severability. If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction; provided, however, that if any fundamental term or provision of this Agreement (including the Limitation of Liability), is invalid, illegal or unenforceable, the remainder of this Agreement shall be unenforceable. Upon a determination that any term or provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Agreement to effect the original intent of the Parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

10.     Amendments. No amendment to or modification of or rescission, termination or discharge of this Agreement is effective unless it is in writing, identified as an amendment to or rescission, termination or discharge of this Agreement and signed by an authorized representative of each Party.

11.     Waiver. No waiver by any Party of any of the provisions of this Agreement shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

12.     Assignment. Service Provider shall not assign, transfer, delegate or subcontract any of its rights or delegate any of its obligations under this Agreement without the prior written consent of Customer. Any purported assignment or delegation in violation of this Section 15 shall be null and void. No assignment or delegation shall relieve the Customer of any of its obligations under this Agreement. Service Provider may assign any of its rights or delegate any of its obligations to any affiliate or to any person acquiring all or substantially all of Service Provider's assets or equity without Customer's consent.

13.     Successors and Assigns. This Agreement is binding on and inures to the benefit of the Parties to this Agreement and their respective permitted successors and permitted assigns.

14.     Relationship of the Parties. The relationship between the Parties is that of independent contractors. The details of the method and manner for performance of the Services by Service Provider shall be under its own control, Customer being interested only in the results thereof. The Service Provider shall be solely

responsible for supervising, controlling and directing the details and manner of the completion of the Services. Nothing in this Agreement shall give the Customer the right to instruct, supervise, control, or direct the details and manner of the completion of the Services. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever.

15.     No Third-Party Beneficiaries. This Agreement benefits solely the Parties to this Agreement and their respective permitted successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

16.     Choice of Law. This Agreement and all related documents including all exhibits attached hereto, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of Delaware (including its statutes of limitations), without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Delaware.

17.     Choice of Forum. Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, including all exhibits, schedules, attachments and appendices attached to this Agreement, and all contemplated transactions, including contract, equity, tort, fraud and statutory claims, in any forum other than the Western District of Pennsylvania or, if such court does not have subject matter jurisdiction, the courts of the Commonwealth of Pennsylvania sitting in Allegheny County, and any appellate court from any thereof. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation or proceeding only in Western District of Pennsylvania or, if such court does not have subject matter jurisdiction, the courts of the Commonwealth of Pennsylvania sitting in Allegheny County. Each Party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

18.     Force Majeure. The Service Provider shall not be liable or responsible to Customer, nor be deemed to have defaulted or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of Service Provider including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other civil unrest, national emergency, revolution, insurrection, government suggested or required shutdowns, nationally or locally declared states of emergency, disease, epidemic, pandemic, lock-outs, strikes or other labor disputes (whether or not relating to either party's workforce), or restraints or delays affecting carriers or inability or delay in obtaining supplies of adequate or

suitable materials, materials or telecommunication breakdown or power outage, provided that, if the event in question continues for a continuous period in excess of 60 days, Customer shall be entitled to give notice in writing to Service Provider to terminate this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date by their respective duly authorized officers.

Nahigian Strategies

By _*Ken Nahigian*_
 Ken Nahigian (Jan 24, 2024 10 15 EST)

Name: Ken Nahigian

Title: Authorized Signer

EPISTEMIX, INC.

By _____

Name: John Cordier

Title: Authorized Signer

# Final_Epistemix_NS Agreement_updates (2)[10]

Final Audit Report                                                        2024-01-24

| | |
|---|---|
| Created: | 2024-01-24 |
| By: | John Cordier (john.cordier@epistemix.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAl2jlHmcKx4Y89FtAuIpt2yP_qrqJ2pEg |

## "Final_Epistemix_NS Agreement_updates (2)[10]" History

📄 Document created by John Cordier (john.cordier@epistemix.com)
2024-01-24 - 2:40:35 PM GMT- IP address: 174.162.203.226

📧 Document emailed to Ken Nahigian (ken@nahigianstrategies.com) for signature
2024-01-24 - 2:40:39 PM GMT

📄 Email viewed by Ken Nahigian (ken@nahigianstrategies.com)
2024-01-24 - 2:41:56 PM GMT- IP address: 74.125.210.169

✒️ Document e-signed by Ken Nahigian (ken@nahigianstrategies.com)
Signature Date: 2024-01-24 - 3:13:02 PM GMT - Time Source: server- IP address: 205.209.26.58

✅ Agreement completed.
2024-01-24 - 3:13:02 PM GMT

📥 **Adobe Acrobat Sign**

# EXHIBIT "2"



> **Thu, Mar 20 at 2:36 PM**
>
> John, the ghosting is really exhausting. We discussed a payment schedule to help you get your $5M in funding that you closed in March. This is the last text i'm sending.

> Ken - sorry I've been avoiding this.
>
> We have been in an expense freeze since November (I know payments stopped before that), the board fired our CFO, we replaced him with a new person, and we are just getting back to a point of stability. Let me sync with our CFO on what our options to pay everything down once our expense freeze stops (on the basis of closing 2 of 3 deals that put us at near break even. 1 of which closed today).
>
> Can you please send me an email with the remaining balance so I can bring it up and confirm the number with him?

> **Thu, Mar 20 at 4:54 PM**
>
> Final_Epistemix_NS Agreement_updates (2)[10] - signed.pdf
> PDF Document · 206 KB

> This was our agreement to help you get your funding

> Right. What is our current balance owed?

> Well the total was $240k, but it has a penalty of $24k for non payment. I'm verifying but I only recall the $10k you wired as we negotiated and that was it. Possibly there was on month's payment in January. But verifying.

> Ok sounds good. Let me know where it's at and I'll confirm a plan with our new CFO. Sorry we aren't in a position to just cover the remainder at once.

02911894.DOCX 8005-0000

**EXHIBIT**

tabbies®

2

# EXHIBIT "3"

## ZIMMER KUNZ

310 GRANT STREET, SUITE 3000
PITTSBURGH, PA 15219

(412) 281-8000
FAX (412) 281-1765

PROFESSIONAL LIMITED LIABILITY COMPANY

ATTORNEYS AT LAW

| | | | |
|---|---|---|---|
| GEORGE N. STEWART (PA & WV) | KERRI A. SHIMBORSKE-ABEL (PA & WV) | ADAM S. AUCHEY (PA & WV) | WEIRTON OFFICE: |
| JONI M. MANGINO (PA, NY, OH & WV) | JOSEPH R. PETRINA (PA & WV) | DANIELLE N. ZIETAK (PA & WV) | 206 AMERICAN WAY SUITE 4 |
| JOSEPH W. SELEP (PA & WV) | GREGORY C. SCHEURING (PA & WV) | ZACHARY G. EVANS (PA) | WEIRTON, WV 26062 |
| JOHN W. ZOTTER (PA & OH) | MARK A. FIORILLI (PA & WV) | JENNIFER L. SUDER (PA) | (304) 914-3518 |
| JEFFREY A. RAMALEY (PA & OH) | CHRISTIAN W. WRABLEY (PA & WV) | FRANK J. KOCHIN (PA) | FAX (304) 292-7529 |
| DANIEL E. KRAUTH (PA) | DARA A. DeCOURCY (PA & WV) | ALEXANDER J. PROTIVNAK (PA & WV) | |
| CHRISTOPHER T. YOSKOSKY (PA) | AARON H. WEISS (PA & WV) | KYZEN D. SMITH (PA) | GREENSBURG OFFICE: |
| SHARON Z. HALL (PA & WV) | BRIAN M. LUCOT (PA, OH & WV) | EVAN J. LINGAFELT (PA) | 132 SOUTH MAIN STREET, SUITE 400 |
| JOSEPH F. BUTCHER (PA, OH & WV) | DAVID F. RYAN (PA, OH & WV) | ATHENA M. DUFOUR (PA & VA) | GREENSBURG, PA 15601 |
| MATTHEW G. BRENEMAN (PA & WV) | DANIEL J. CUDDY (PA) | | (724) 836-5400 |
| RYAN A. ZELI (PA, NY, OH & WV) | JOHN J. GAUGHAN (PA) | | FAX (724) 836-5149 |

E-Mail Address: weiss@zklaw.com
Direct Dial: 412-434-5421

April 23, 2025

**VIA CERTIFIED MAIL (RETURN RECEIPT REQUESTED) & REG. MAIL & E-MAIL**
john.cordier@epistemix.com
Attn: John Cordier
Epistemix, Inc.
3706 Butler St.
Pittsburgh, PA 15201

> RE:   **NS Inquiry for Epistemix**
> **Debt Collection Notice for Breach of Contract**
> **Nahigian Strategies, LLC v. Epistemix, Inc.**

Mr. Cordier:

Please be advised that my office and I have been retained by Nahigian Strategies, LLC ("Nahigian") to collect the outstanding debt owed by Epistemix, Inc. ("Epistemix") and signed by you on its behalf. A courtesy copy of the Agreement is attached for your convenience as Exhibit "1".

According to this Agreement, Epistemix was obligated to pay Nahigian a total of $240,000.00 for the services it rendered, which was to be paid in monthly installments of $20,000 and such payments completed no later than February 2025. See Agreement, ¶ 4(1). Epistemix has not paid for the same, despite repeated promises. A courtesy copy of your recent text messages from March 2025 acknowledging this obligation to pay are attached for your convenience as Exhibit "2".

Nahigian acknowledges that $30,000 was paid, in the form of a $10,000 good faith gesture on December 26, 2023 and one monthly installment of $20,000 on March 1, 2024. After that time all payments have stopped. The payment owed is now more than 14 months past due. Because payment is now overdue, Nahigian is further entitled to a contractual penalty of

{02911889.DOCX 8005-0090 }

$24,000, plus 10% interest per annum. See Agreement, ¶ 4(2). Thus, please allow this letter to serve as a formal demand that Epistemix pay the current amount owed: $261,307.80.[1]

If Nahigian does not receive full payment within ten (10) days, it will be forced to file legal action against Epistemix in the United Stated District Court for the Western District of Pennsylvania. See Agreement, ¶ 17. If such action is necessary, Nahigian will be seeking additional damages, including but not limited to further interest, filing fees, and any other legal remedy available. But Nahigian sincerely hopes to avoid such an unfortunate circumstance, if possible. Thus, Nahigian proposes that it will accept the reduced rate of **$260,000 as full and final payment, so long as it is received within ten (10) days of the date of this correspondence**. Please ensure such payment is promptly provided payable to "Nahigian Strategies, LLC" and mailed to my office at the address above.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

AARON H. WEISS

AHW:sal (Encl)

cc:     (w/encl., via email)
        Ken Nahigian

---

[1] ($240,000 - $30,000 paid + $24,000 penalty) x interest of 10% per annum over 14 months.

{02911889.DOCX 8005-0090 }

**UNITED STATES POSTAL SERVICE**

May 6, 2025

Dear Scott Lehner:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9489 0178 9820 3039 3076 71**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | April 25, 2025, 10:59 am |
| **Location:** | PITTSBURGH, PA 15201 |
| **Postal Product:** | USPS Ground Advantage™ |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |

## Shipment Details

| | |
|---|---|
| **Weight:** | 0.4oz |

## Recipient Signature

Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004